# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 4010 | DATE | 6/4/03 |
| CASE TITLE | KENTIN WAITS v. CITY OF CHICAGO, MICHAEL PRUSANK, and DANIEL DURST | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Entry of Judgment (Doc #66, #75)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]. Plaintiff's Motion for Entry of Judgment is GRANTED in part and DENIED in part. Judgment is entered in the amount of $15,000.00 in compensatory damages against defendants. The Court proposes that the jury's punitive damages verdict of $500,000.00 against Defendant Durst and $1,500,000.00 against Defendant Prusank should be reduced to $20,000.00 against Defendant Durst and $25,000.00 against Defendant Prusank. Plaintiff shall file a pleading by June 24, 2003 in which he either accepts or rejects the proposed remittitur. If plaintiff rejects the proposed remittitur, the Court will order a new trial on the issue of punitive damages. If plaintiff accepts the proposed remittitur, the Court shall enter judgment in accordance with this Order. Enter memorandum opinion and order.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 3 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 06 2003 date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | 83 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 6-4-03 date mailed notice | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENTIN WAITS, )
)
Plaintiff, )
)
v. )
) NO. 01 C 4010
CITY OF CHICAGO, MICHAEL PRUSANK, )
and DANIEL DURST, ) The Honorable William J. Hibbler
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court are plaintiff's motions for entry of judgment. Plaintiff filed this action against the City of Chicago and two police officers, alleging the use of excessive force in violation of his civil rights under 42 U.S.C. § 1983, and a violation of the Illinois Hate Crimes Act, 720 ILCS 5/12-7.1. The case proceeded to jury trial on October 21, 2002. A week later, the jury began is deliberations. On November 1, 2002, the jury returned a verdict in favor of plaintiff and against defendants on the excessive force claim, in the amount of $15,000 in compensatory damages, and $500,000 against Officer Durst, and $1,500,000 against Sergeant Prusank in punitive damages. Additionally, the jury found in favor of defendants and against plaintiff on the Hate Crime claim. Because I was unavailable at that time to receive the verdict, the district judge sitting in my stead advised the parties to await my return for entry of judgment. Nevertheless, plaintiff proceeded to file two separate motions seeking to have judgment entered on the jury verdict as rendered. Not wanting to delay resolution of this matter any further, the Court issued a minute order on December 3, 2002, setting a briefing

1



schedule on plaintiff's motions, with defendants' objections to the amount of judgment due by December 13, 2002, and plaintiff's reply due by December 27, 2002. The parties have submitted those filings[1] and the issues with respect to the proper amount of the judgment are now ripe for resolution. For the following reasons, the Court concludes that the evidence sufficiency supports the compensatory damages award; however, the punitive damages award must be reduced.

## I. EVIDENCE PRESENTED AT TRIAL

On July 23, 2000, plaintiff was arrested at his home for spraying water on a Chicago police officer on the previous afternoon. Among the arresting officers were defendants Durst and Prusank. Plaintiff testified that during transport to the police station, Durst made threatening gestures and comments. Once inside the station, plaintiff testified that he was led into a small interrogation room and his hands were cuffed behind his back. Plaintiff then explained that Durst and Prusank entered the room, closed the door, and began berating plaintiff for spraying water on the police officer. Plaintiff then testified that Durst proceeded to strike him fifteen to twenty times in the face, head and neck with his open hand and kneed him in the groin. Plaintiff further testified that Prusank, who was Durst's superior officer, did nothing to stop the assault. After defendants finished their interrogation, plaintiff was processed and released the following morning. Plaintiff did not present evidence (other than his own testimony) regarding any physical injuries suffered during the attack, but did offer evidence concerning his emotional distress following the attack. Specifically, plaintiff's friends and

---

[1] Defendants' also filed a reply in support of their objections, to which plaintiff then filed a response. Neither defendant nor plaintiff sought leave to file additional materials beyond what the Court directed in its December 3, 2002 Order. As such, the Court will not consider defendants' reply and plaintiff's response.

therapist testified that after the beating plaintiff became depressed, unable to concentrate at work, and fearful.

Defendants argue that the jury's large compensatory and punitive damage awards are not rationally connected to the evidence. Defendants claim that plaintiff failed to produce evidence of physical injury resulting from the arrest and did not present credible evidence regarding his allegations of emotional distress. Thus, defendants maintain that the jury's verdict could only have been the result of bias, passion, or prejudice rather than based upon the evidence presented at trial.

In response, plaintiff asks the Court to defer to the jury's considerable discretion to fashion appropriate awards. Plaintiff also argues that the evidence accepted by the jury justifies a substantial punitive damage award because defendants' conduct was particularly reprehensible. Plaintiff further maintains that the award, while high, falls within the range of acceptable awards in comparable cases and that jury's award is necessary to deter and punish defendants.

## II. DISCUSSION

The jury's damage calculations are entitled to great deference, and the Court may only vacate the jury's verdict if the award is either "monstrously excessive," "shocks the judicial conscience," "has no rational connection to the evidence," or "clearly appears to be the result of passion or prejudice." *American National Bank & Trust Company of Chicago v. Regional Transportation Authority*, 125 F.3d 420, 437 (7th Cir. 1997); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 516 (7th Cir. 1993).

Compensatory and punitive damages, although usually awarded at the same time by the same decision-maker, serve different purposes. *Cooper Industries, Inc. v. Leatherman Tool Group,*

Inc., 532 U.S. 424, 432 (2001). Compensatory damages "are intended to redress the concrete loss that the plaintiff suffered by reason of the defendant's wrongful conduct." Id. By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution. Id. Here, defendants ask the Court to set aside or significantly reduce both the jury's compensatory and punitive damage awards. The Court will therefore address each award.

A. Compensatory Damages

The Seventh Circuit uses three criteria to review a compensatory damages award: (1) whether the award is "monstrously excessive"; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases. *See Tullis v. Townley Eng'g Mfg. Co.*, 243 F.3d 1058, 1066 (7th Cir. 2001). Because the Seventh Circuit views the "monstrously excessive" standard as "rather vague," it has suggested that it be merged with the rationality inquiry. *U.S. EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 n.13 (7th Cir. 1995).

Defendants claim that the $15,000 compensatory damages has no rational connection to the evidence. Defendants argue that plaintiff did not produce any evidence of physical injuries and did not offer any credible evidence demonstrating emotional damages. Defendants conclude that this glaring lack of evidence must mean that jury based their decision on passion and prejudice rather than on a rational connection to the evidence. Defendants therefore request that the Court set aside or substantially reduce the jury's compensatory damages award to reflect the insubstantial evidence supporting plaintiff's claims.

Defendants' position is unconvincing. Defendants do not explain why plaintiff was required to produce actual physical evidence to substantiate his injury claims. The jury was

4

presented with evidence, in the form of plaintiff's own testimony, regarding his physical pain and suffering following the arrest and they were therefore permitted to make the rational connection that defendants' tortious conduct caused plaintiff's injuries. Moreover, even if plaintiff did not convincingly demonstrate his physical injuries, he certainly offered substantial evidence regarding his emotional distress flowing from defendants' activities. *See Tullis*, 243 F.3d at 1068 ("[a]n award for non-pecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony about his or her emotional distress."); *see also Niebur v. Town of Cicero*, No. 98 C 4157, 2002 WL 485698, at *22 (N.D.Ill. 2002)("{T]he Seventh Circuit has not established any requirement that claims of emotional injury must be supported by corroborating testimony."). In addition to his own testimony regarding his post-arrest symptoms, plaintiff produced three witnesses to corroborate his emotional decline. While the defendants might not have found plaintiff's testimony in this regard particularly credible, it appears the jury concluded otherwise. The jury was able to observe plaintiff when he was testifying and they apparently found his testimony to be sincere and sufficient to convince them that he deserved the award they gave him. Defendants' contention that plaintiff did not produce adequate evidence to justify the jury's compensatory damage award is therefore without merit.

Additionally, the jury's $15,000 compensatory damage award is not considerably out of line with comparable cases in this circuit and in other circuits. For example, in *Taliferro v. Augle*, 757 F.2d 157 (7th Cir. 1985), the plaintiff claimed he was arrested for no reason and the police injured him by destroying his dental plate and knocking out many of his teeth. On appeal, the court allowed $22,000 in compensatory damages. Similarly, in *Terrel v. Village of University Park*, 1994 WL 30960 (N.D.Ill. 1994), the court upheld an award of $5,000 in

compensatory damages where the plaintiff was arrested, slapped and slammed against a police car. Another example is *Burks v. Harris*, 1991 WL 140114 (N.D.Ill. 1991), where the court upheld an award of $13,000 in compensatory damages where the plaintiff was struck below the eye with a police radio. *See also Panholzer v. San Francisco Bay Area Rapid Transit Dt.*, 1994 WL 46731 (N.D. Cal. 1994)($2,000 in compensatory damages where the plaintiff was shackled and punched in the jaw).

The Court is therefore of the view that considering the totality of the evidence and comparing this case to similar excessive force cases, the jury award of $15,000 in compensatory damages is not so flagrantly extravagant as to require remittitur.

B. Punitive Damages

It should be presumed that a plaintiff has been made whole by compensatory damages, so punitive damages should be awarded only if the defendant's culpability is so reprehensible to warrant the imposition of further sanctions to achieve punishment or deterrence. *State Farm Mutual Automobile Ins. Co. v. Campbell*, 123 S. Ct. 1513, 1521 (2003). In a section 1983 case, a jury may award punitive damages if it finds that the defendant's conduct was "motivated by evil intent or callous indifference to the plaintiff's federally protected rights." *Marshall v. Teske*, 284 F.3d 765, 772 (7th Cir. 2002)

Defendants label the jury's two-million dollar punitive damage award "unconstitutionally excessive" and ask the Court to set aside or significantly reduce the award. To support this request, defendants rehash their arguments regarding the paucity of evidence to corroborate plaintiff's physical injuries and emotional damages. Defendants do not, however, address whether the defendants' conduct warranted an award of punitive damages. Nor do they explain

6

why jury's punitive damage award will not achieve the goals of punishment and deterrence.

The Supreme Court has directed courts focus on three general "guideposts" to determine whether a punitive damage award is excessive. *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). First, and most importantly, the court must consider the degree of reprehensibility of the defendant's conduct. Second, the court looks at the relationship between the amount of the punitive damage award and the harm or potential harm suffered by the plaintiff. Third, the court must examine the sanctions imposed in other cases for comparable misconduct. *Id.* at 574-575. Other factors, such as the deterrent goal of punitive damages and the financial impact that an award will have on a defendant are relevant as well. *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21-22 (1991); *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 (1993); *Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 581 (7th Cir. 1996).

1. Reprehensibility

The first and most important indicium of the reasonableness of a damages award is the reprehensibility of the defendant's conduct. *BMW*, 517 U.S. at 575. The Supreme Court has instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. *State Farm*, 123 St. Ct. at 1521.

Placed on this scale, defendants' conduct is easily characterized as reprehensible. The jury was offered evidence describing a malicious and premeditated battery inflicted upon a

7

defenseless victim. The evidence showed that there was no need for defendants to apply *any* force against plaintiff, much less the amount of force that they used. The fact that defendants were Chicago police officers only contributes to the particularly repulsive nature of their offense. *See Taliferro*, 757 F.2d at 162 ("Police brutality is an exceedingly serious matter."). Accordingly, the Court does not hesitate in labeling defendants' conduct as reprehensible. *See Ibanez v. Valasco*, No. 96 C 5990, 2002 WL 731778 (N.D.Ill. 2002).

Defendants' continued insistence that plaintiff did not produce sufficient evidence to support his version of the encounter does not effect the Court's conclusion. This case came down to a credibility contest, and the Court will not question the jury's acceptance of plaintiff's testimony regarding the beating. *See, e.g., Fall v. Indiana University Board of Trustees*, 33 F.Supp.2d 729, 743 (N.D. Ind. 1998). The jury was free to conclude that defendants' forceful and deliberate actions supported an award of punitive damages. *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 581 (7th Cir. 1996) ("Evidence that suffices to establish an intentional violation of protected civil rights also may suffice to permit the fact finder to award punitive damages, provided the [jury], in its discretionary moral judgment, find that the conduct merits a punitive award.").

The Court recognizes however that defendants' conduct was not nearly so reprehensible as to justify a total punitive award of $2,000,000. This conclusion is supported by the considerably lower punitive damage awards in similar cases involving conduct significantly more violent and reprehensible than here. *See Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)($22,500 against each defendant prison guard who repeatedly kicked, beat and then maced the plaintiff); *Taliferro*, 757 F.2d at 159, 162 ($25,000 in punitive damages against two

Chicago police officers for destroying the plaintiff's dental plate and knocking out many of his real teeth); *Ibanez v. Valasco*, 2002 WL 731778 (N.D. Ill. 2002)($200,000 in punitive damages against two correctional officers for beating and kicking the plaintiff without provocation); *Terrell v. Village of University Park*, 1994 WL 30960 (N.D.Ill. 1994)($10,000 in punitive damages for plaintiff who was arrested, slapped and slammed against police car); *Burks v. Harris*, 1991 WL 140114 (N.D. Ill. 1991)($6,500 in punitive damages against defendant police officers for striking the plaintiff below the eye with police radio); *Grosse v. Van Milligen*, 1987 WL 16242 (N.D.Ill. 1987) ($10,000 in punitive damages against police officer who grabbed the plaintiff, threw him to the ground, and punched him multiple times); *O'Neill v. Krzeminski*, 839 F.2d 9, 10 (2nd Cir. 1988)($185,000 in punitive damages against three police officers involved in severely beating handcuffed plaintiff about his face and head); *Lewis v. Downs*, 774 F.2d 711, 712-15 (6th Cir. 1985) ($12,000 in punitive damages against police officers for kicking the plaintiff while she lay handcuffed on the ground and unnecessarily striking her husband and son with a night stick about the head and mouth); *Hinshaw v. Doffer*, 785 F.2d 1260, 1269-70 (5th Cir. 1986)($4,000 against police officers who repeatedly stomped on the plaintiff's head).

Accordingly, when compared with similar cases awarding punitive damages for police misconduct, the Court must conclude that the $2,000,000 punitive award here grossly exceeds the relative reprehensibility of defendants' conduct. *BMW*, 517 U.S. at 575 (punitive damages "should reflect the enormity of [a defendant's] offense.").

2.  Ratio

The second indicium of an unreasonable or excessive punitive damages award is the relationship between the amount of the punitive damage award and the harm or potential harm

9

suffered by the plaintiff. *BMW*, 517 U.S. at 581. The punitive damage award must bear a "reasonable relationship" to compensatory damages. *Id.* at 582. A comparison between the compensatory award and the punitive award is therefore significant. *Id.*

In this case, the $2,000,000 in punitive damages award is roughly 133 times the amount of plaintiff's actual harm as determined by the jury. Although the Supreme Court has consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, it has noted that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23-24 (1991); *BMW*, 517 U.S. at 581. Also, the Supreme Court has recently stated that when compensatory damages are substantial (as is the case here), then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limited of the due process guarantee. *State Farm*, 123 S. Ct. at 1524. Here, the 133 to 1 ratio is particularly spacious, providing further indication that the jury's award was excessive and must be reduced.

3. Sanctions for Comparable Misconduct

The third indicium of excessiveness articulated in BMW is a comparison between the award and the civil or criminal penalties authorized or imposed for comparable misconduct. *BMW*, 517 U.S. at 575. The Court has reviewed numerous similar cases and has found tremendous variation in punitive damages awards[2] *See section 1 above.* But a reviewing court

---

[2]These include a number of cases where the plaintiff suffered no cognizable physical injuries. *See, e.g., Grauer v. Donovan*, 1996 WL 82462 (N.D.Ill. 1996)($5,000 in punitive damages against police officers even though the plaintiff's injuries were purely emotional and reputational); *King v. Macri*, 800 F.Supp. 1157, 1163 (S.D.N.Y. 1992)($125,00 against two police officers involved in scuffle with the plaintiff was not excessive even though the plaintiff suffered no injury); *Mendoza v. City of Rome*, 872 F.Supp. 1110 (N.D.N.Y. 1994)($62,000 award for the plaintiff who suffered only limited injury to his knee, head, and wrists after he was slammed into a police car and pushed into the lack seat of a vehicle).

10

should search for comparisons solely to determine whether a particular defendant was given "fair notice" as to its potential liability for particular misconduct, not to determine an acceptable range into which an award might fall. *See Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70,83 (1st Cir. 2001). There is simply no way defendants could have fathomed that their conduct would subject them to two-million dollars in penalties. This conclusion based on a review of similar cases awarding far lower punitive damage awards for comparable misconduct. Because defendants did not have fair notice of the severity of the jury's punitive damage verdict, the award must be reduced. *BMW*, 517 U.S. at 574.

4. Other Reasons for Reduction

The enormity of the total punitive award in this case also warrants consideration of a factor that was not before the Supreme Court in BMW: defendants are individuals with annual salaries of approximately 57,000 and $72,000. The Seventh Circuit has directed courts to consider reducing punitive damages awards if the defendant can show financial hardship. *Harris v. Harvey*, 605 F.2d 330 (7th Cir. 1979). The Court finds that the awards against defendants far exceed their ability to pay. The excess amounts, even if warranted, will serve no punitive purpose, because the defendants will never satisfy the awards. Damage awards which greatly exceed the defendant's ability to pay result in a waste of time both for the jury, and later, the bankruptcy courts. *Kemezy v. Peters*, 79 F.3d 33, 35 (7th Cir. 1996); *see also Bell v. City of Milwaukee*, 746 F.2d 1205, 1267 (7th Cir. 1984)(concluding that reduction in assessment of punitive damages against individual defendant from $350,000 to $50,000 considered defendant's relative wealth, yet still fulfilled aims of punishment and deterrence). Given the fact that defendants are personally responsible for satisfying the judgment, the jury's punitive damage

11

award in this case is far in excess of what is reasonably necessary to punish and deter.

In sum, an application of the BMW guideposts to the facts of this case, especially in light of the substantial compensatory damages award, would justify a punitive damages award at or near the amount of compensatory damages. The punitive awards of $500,000 and $1,500,000 were neither reasonable nor proportionate to the wrong committed. The Court will grant defendants' motion for a remittitur and reduce plaintiff's punitive award to $20,000 against Durst and $25,000 against Prusank.[3] This award is in line with comparable cases and will serve the goals of punishment and deterrence.

The Court is mindful that it may not arbitrarily reduce plaintiff's punitive damage award. Rather, the proper procedure is to give the plaintiff the choice of either accepting the remittitur, or of rejecting the remittitur and forcing a new trial limited solely on the issue of punitive damages. *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1391 (7th Cir. 1984); EEOC v. Mid-Continent Security Agency, Inc., 2001 WL 800089 at * 6(N.D.Ill. 2001). Plaintiff shall inform the Court of his decision to accept or reject the proposed remittitur within twenty days of this Order.

### III. CONCLUSION

Defendants' motion for a remittitur of the compensatory damages award is **DENIED**. Defendants' motion for remittitur of the punitive damages award is **GRANTED**. Plaintiff shall file a pleading within 20 days of this Order in which he either accepts or reject the proposed remittitur of the jury's punitive damage award. If accepted, a punitive damage award of $20,000

---

[3] The award against Prusank is kept higher than the award against Durst to respect the jury's determination that Prusank, as Durst's superior officer, is deserving of more punishment and deterrence.

12

against Officer Durst and $25,000 against Sergeant Prusank will be entered in the judgment. If the proposed remittitur is rejected, the Court will order a new trial on the issue of punitive damages.

IT IS SO ORDERED.

6/4/03

William J. Hibbler
United States District Court